Good morning. May it please the Court. My name is Molly Quinn, and I represent the appellate Harvey Hugs. We're asking the Court to vacate the $70,000 restitution award for several reasons. First, restitution was not authorized under the MVRA, but only as a discretionary special condition of supervised release. And second, the restitution award exceeded what it was charged and convicted of, which was selling Golden Eagle feathers on three occasions. We contend that these issues are controlled by this Court's opinions in Bertucci and Treetop, and the proper remedy is to amend the judgment to include restitution as a special condition of supervised release only, and only in the amount of $1,600, which is the amount the government expended for the controlled buys. I'll start with the first issue, the statutory authority for the restitution award. The District Court plainly erred in awarding restitution under the MVRA. Mr. Hugs was convicted of three counts of violating the Bald and Golden Eagle Protection Act, which is, of course, a Title XVI offense. The MVRA does not authorize restitution for this Title XVI offense. We know that from this Court's opinion in Bertucci. What about the standard condition in the judgment, standard line in the judgment that says, quote, or under any other statute? Yes. I think that that section is referring to statutes that authorize restitution as an independent statutory basis, and that this Court's opinions in both Bertucci and then in Treetop specifying a special condition of supervised release mean that restitution can only be included on that page of the judgment. I understand the basis for remand, but does it say any other statute? I'm quoting it right, aren't I? It does. Okay. Well, why doesn't any other statute mean any other statute? Why doesn't it bring in the supervised release statute? I think that I would just rely on the language in this Court's cases in Bertucci and Treetop saying that restitution can only be included as one of those special conditions. And we're not contending that restitution can't be ordered, just that it's not a mandatory condition of supervised release. Does it matter whether the judge listed it under that heading or versus the what would be the other heading? Special? Special conditions. Is that a material difference? I think it depends on, I'm sorry. Is that a material difference as long as he brought in the statute? I think if it's clear that this restitution award is only awarded as a discretionary special condition of supervised release and how that would affect the enforceability of the restitution order, first, whether it's mandatory and what considerations the Court can consider in setting the restitution amount, and second, whether it's enforceable during the term of imprisonment or only once the defendant begins supervised release. But if those things are clear and if it's not enforced as an independent kind of standalone, however you want to put it, part of the sentence, it's not a separate criminal monetary penalty, I guess, as long as it's only enforced as a condition of supervised release, that's the key point. Is that good or bad for your client to put it as part of supervised release special condition? I think it's neutral. I think that the same You said something about enforcement during incarceration. Yes. Are you saying that if it's under the MVRA, then it's enforced earlier? It is, and that's in the district court's payment plan under the criminal monetary penalties. Do you think if it were only a condition of supervised release, then they wouldn't start collecting until? Yes, Your Honor. I think this Court recently issued an opinion. It is an unpublished opinion in Gibson. This was about a no-contact condition, but it said the district court doesn't  is in custody. And I do, there is a Seventh Circuit case, I believe, that found this specifically. I can provide that site, and it's linked to an Eighth Circuit case. Would you provide that site? I will, yes. I will. In that Seventh Circuit case, I'll do it in a 28-J, but it's Hasselbrook, and it is referred to in an Eighth Circuit opinion specifically authorizing restitution as a special condition of supervised release for then a Title 26 offense.  And in this Court's opinion in Bertucci and Treetop, that restitution can only be awarded as a discretionary special condition of supervised release for this Title 16 offense, and that it would be plain error, is plain error, to award it under the NPRA. And that comes from two cases, footnote 7 in Bertucci, which says if we reviewed this issue, where the district court awarded restitution as kind of a standalone or independent part of the sentence, we would find that that was plain error. And then in this Court's opinion in Lukowski, which is also cited in appellant's briefs, in a different context, said that awarding restitution without a statutory basis to do so is plain error, or is plain error, and then the Court reversed. What about the statement of the attorney that the restitution was, I can't remember the exact words, but indication that there was no dispute about restitution, the figure was correct, and I think maybe a fair reading or interpretation of the words is there's no objection to the restitution. I think, and I want to address that in detail, but in terms of this first issue, the statutory authority, I don't think there's any way to read that statement, regardless of what you think about it in terms of the number, as agreeing that the NVRA authorizes restitution as a standalone, and that this would be, that this is a pretty clear example of forfeiture, just a plain failure to object to the PSR, which this Court reviewed for plain error. But then moving to that issue. Well, what did, what was the statutory basis in the PSR? It was identified as the NVRA. Okay. And there was no objection to that, so we believe that that triggers for that issue in plain error review. And then moving to. The judge could have used some help in this case, saved everybody some time. Go ahead. What's your next point? Thank you. I think, I will turn to Judge Shepard, your question about what about that statement. And this relates to the statement that I think the amount of $70,000 is properly calculated. And our argument, of course, on appeal is that the District Court didn't have authority to award $70,000 in restitution for the offenses for which Mr. Huggs was charged and convicted of, because he was, in short, he was not charged with killing any of these eagles. He was only charged with selling or offering for sale, bartering, transporting a single golden eagle, as in the jury instructions for each count. But overall, I believe this issue is preserved if you take the record as a whole. Defense counsel raised restitution as an issue when making general sentencing remarks. The District Court and the government both recognized this as an issue, as a live issue in that proceeding of whether the court could award $70,000. The District Court invited further argument and, quote, separate legal authority. And then defense counsel cited Treetop. And Treetop is an on-point case about the sale of eagle feathers as opposed to somebody who has been charged and convicted of killing an eagle and says that in those cases, the restitution is the controlled by money. So defense counsel cited Treetop. The District Court made a statement that I think can be interpreted as saying that it viewed the $70,000 restitution award as consistent with Treetop and then said, I'm going to impose it. Does it matter, guilty plea in Treetop in trial here, does that make any difference? I don't believe so because I think the operative or the key language in Treetop is the court is saying convicted of. And so ultimately, what we're looking at is comparing the indictment and then here are the jury instructions, which are actually a little bit narrower than the indictment. And that is what the offense of conviction is. So I do, just to kind of get back into detail, overall, our position on this issue, the $70,000 being preserved, is that the court, in effect, in what happened in this hearing, exercised its discretion to consider what would be an untimely objection to a statement in the PSR. The District Court acknowledged the issue, I think even as early as when the parties were discussing the payment plan. So this is after defense counsel makes the sentencing argument. And then the court brings up the payment plan and says, I understand you discussed that and that's the restitution, and I'm sure government counsel will respond. And then said, but I do have to set, for whatever it is, a payment schedule. And so as early as, I think you said on page 20 of the sentencing transcript, as early as that point, the District Court is recognizing this as an issue that has been raised by defense counsel, despite saying, we agree that $70,000 is properly calculated, and I do want to return to that point, that that is an acknowledgment that if you take 14 birds and you agree that Mr. Huggs is liable for 14 birds, and the District Court has said $5,000 per bird, that that does equal $70,000. And that is the amount used for the loss amount in the guideline calculation. Counsel, what do you think is the authority for, I noticed that in the case, for this District Court's standing order on what will happen in particular cases? I think that the District Court and the government would be relying on a statement in a footnote in Bertucci that talked about, in that case, if the District Court elected to award restitution as a condition of supervised release, it could rely on that District's fine schedule. So I think that's what the parties are relying on. So you think this Court has approved it? But here, I think that the issue is really not how much is each bird worth. The issue is that Mr. Huggs is only charged and convicting with selling eagle feathers, not killing. TreeTrop draws a line between killing, that was Bertucci, where the court said it would be okay to award whatever the fine schedule says a bird is worth, a whole bird is worth, and when the person is convicted of selling eagle feathers. And in that case, the restitution has to be the controlled buy money expended by the government. And here, that's the $1,600. And unless there are further questions at this point, I think I would reserve the remainder of my time. Thank you. Are there cases where the trafficking in feathers could bring in the killing of the bird because it's a necessary aspect of the sale? I, if killing were charged, or taking is the word in the statute, if it were charged in the indictment, then it sure would. It has to be charged separately, is your point about TreeTrop. Yes. And I think that gets to, I think of it as there's two requirements for restitution. One, of course, is that the government has to prove direct and proximate cause of the loss. But that's not sufficient to order restitution. The restitution, kind of under Huey in this court, stated that in Howard, which is cited in TreeTrop, yeah, Sheldon TreeTrop, that the restitution has to be a conduct underlying the offense of conviction. And so it's that piece that we're missing here, that the offense of conviction is the trafficking. All right. Thank you for your argument. Thank you. Ms. Swanns, we'll hear from you. May it please the Court, Counsel? My name is Charlotte Swanns. I'm with the United States Attorney's Office for the District of South Dakota, here representing the United States. I'm here today to respectfully request that this Court affirm in all respects the restitution order entered by the district court in this matter. The defendant is appealing or arguing two objections to the restitution order that it, we believe, affirmatively waived at sentencing. And thus, those are not reviewable. Further, even assuming that either or both of those are deemed to be reviewable, deemed to be forfeited rather than waived by a failure to raise a timely and clear objection to the district court, the defendant nonetheless has not and cannot meet his burden under the plain error standard of review. Accordingly, we believe it's appropriate to affirm the restitution order here. Looking first at the issue of waiver, I believe it's pretty clear that the first issue, the basis for ordering restitution, was affirmatively waived. The defendant received the pre-sentence investigation report in this case. He had ample time to review it with his attorney, as he indicated at sentencing. He did not submit any written objections within the 14 days required by Federal Rule of Criminal Procedure 32, and thus it would be within the court's discretion, the district court's discretion, whether or not to allow any objections or discussion of that at the sentencing hearing. Further, at the sentencing hearing, he did not bring up any objections at that point. Defense counsel further went on to state that it had no objections whatsoever to the PSR, and then as previously discussed, stated that the client, the defendant, would owe restitution and that the amount of the restitution was properly calculated. All of those, we believe, is an affirmative waiver to both of these arguments at this point, and thus those are not reviewable. This court has clearly established that a fact that is admitted in the PSR or to which there is not a clear objection is one that the court may rely upon in its determination, and that's what happened here. Looking, however, at the issue of forfeiture, if this court determines that it believes either of these issues was simply forfeited by any ambiguous references at the sentencing hearing, nonetheless, the defendant cannot establish plain error here. Looking at the first issue, the basis for ordering restitution. Why isn't that plain error? Why isn't it plain error to rely on the MVRA when Title 16 isn't covered in the statute? So the defendant agrees that 18 U.S.C. 3583 is an appropriate basis for awarding restitution as a condition of supervised release. Okay, so you're relying on the supervised release. Correct. And that does include the precise language that was in the written judgment that indicates that the defendant may be ordered to make restitution in accordance with sections 3663 and 3663A or any other statute authorizing a sentence of restitution. That is in the statute that the defendant agrees was an appropriate basis for ordering restitution, the exact same language that was in the district court's judgment here. Even considering... What about this question of mandatory versus special? Well, I think, I mean, case law establishes that if there's a conflict or any ambiguity between the written judgment and the oral sentencing that the oral sentencing controls. We believe here the oral sentencing makes it clear that this was ordered as a condition of supervised release. Within the context of how it was discussed, each time that the district court brought it up, it was in the context of going through, here are the conditions of supervised release, restitution. And then here are the conditions of supervised release, restitution. So it was either within the direct line or in the middle of the discussion of what the conditions of supervised release were. But if you actually look at the document, it's not listed as a special condition of release, right? That's correct, Your Honor. So... Do you think the judgment should be corrected to conform to the oral pronouncement? Correct, Your Honor. And listed as a special condition instead of mandatory? Yes, Your Honor. And then it would be under the, as a condition of supervised release? Yes. The United States agrees with that. All right. So that seems like the parties are in agreement on that. And then the next question is the amount. How do you get around treetop? On the, you know, on the question of... Right, Your Honor. The value of the whole bird versus the cost of investigation question. So I believe that the district court's determination here was directly aligned with treetop. Treetop was a case that held that, this court held that the district court may only order restitution for the offense to which the defendant pled guilty, not for any other charged or suspected conduct. And the language in that determination was based on the existing record, the actual loss caused by treetop's offense is limited to the amount of money that the government paid. That was a case where treetop pled, he pled guilty, so there was not a substantial record like we have in this case. He pled guilty to selling, and this court determined that the government had not in that case, proven by a preponderance of the evidence, that his actions in that violation involved the killing of an eagle. There was not evidence tying how the eagle got to him to the offense for which he was convicted, which was selling it. And that was the focus of consideration here before the court was, is there any evidence that indicates within this conduct for which he was convicted, the selling, that he actually killed this eagle. And in that case, the government did not prove that by a preponderance of the evidence. Here we have a very different case. Treetop talks about the defendant, when he pleads guilty, here's what we look at, and we look at the whole record. In this case, the whole record is a two-day trial. It's a two-day trial where we have recorded admissions by the defendant that he did kill eagles. We have the CI testifying to the fact that that was his practice, was to hunt and kill eagles. We have DNA evidence that shows the eagles that he specifically sold, those parts came from four different eagles. But then when the warrant was executed and we went into his home, the DNA from those eagles that he sold were on the parts in his home, but there was also DNA from seven additional eagles in his home. This was his inventory that he was using to commit his offense. And it's important to recall that the periods of time for which he was convicted, the first period was approximately a week, second period was approximately two weeks, last period was approximately a month. And during that time, it wasn't just a single eagle or the part of a single eagle that he offered to sell to the CI. There were numerous parts. Each time he would offer something from one eagle, if that was rejected, he would send a picture of clearly a different eagle. So it was clear that he had an inventory that he was offering for sale that was from multiple eagles, in this case DNA evidence of 11 different eagles. That was part of the offense of conviction, which, you know, the statute makes it an offense to offer for sale the parts of an eagle as well as sell the parts of the eagle. So we believe that his offenses of conviction here clearly involved the killing, his practice of killing the eagles, hunting them, killing them, offering for sale, and then selling. In this case, we would agree that four different eagles were actually sold, but there were 11 total tied by DNA to what he was offering for sale, which is a violation of the statute under which he was convicted, and then he admitted to killing three. What was he actually convicted of? He was convicted of a violation of this particular statute, of violating the Bald and Golden Eagle Protection Act. How did the indictment read? I'm asking, what was the offense? Sale of a feather? The indictment, I'm not going to misspeak it. I don't want to state it incorrectly, but it did reference the violation of the statute. Well, it's important. You seem to be talking about all of what we might call relevant conduct, but the offense of conviction has certain elements. So I was trying to get to whether killing the bird was an element of the offense or not. It was not an element that was required to be proven because of how broad this statute is written, that the taking but also the offering for sale and the selling is a violation of the statute. It's solely possessing and selling, according to the other side's brief. Is that accurate? Yes. I do believe that's accurate. I mean, again, I don't want to misstate it, but I do believe the indictment included, it stated that the possessing and selling of the golden and bald eagle was in the indictment itself. And it's clear here, based on the entirety of the evidence, that he possessed much more than just the four eagles from which the parts that he sold came from. And it also was established, again, that that happened because he hunted and killed those eagles. So you don't know what the jury was instructed, what they had to find in order to convict him? I don't want to misstate that, Your Honor, and so I'm not going to attempt to. But it would have, I mean, the indictment, again, talked about possessing and selling. Well, possessing and selling what is the question I'm trying to get to. But if you don't know the answer, we'll look it up and figure it out. My apologies, Your Honor. I would also note that if this issue is even deemed reviewable, again, we believe it's been forfeited. And thus, it's the defendant's burden to establish plain error here. And the second prong of that is that an error is clear. And we do not believe that he has met his burden of establishing, one, an error based on the entirety of the record here. And, two, clearly there's a reasonable dispute in light of the evidence whether it is clear. And so thus, he would not satisfy that second prong. While I brief, the other side cited the Hansmeier case, and you had no opportunity to respond to it. Are you familiar with that case they cited where they say you can acknowledge something's properly calculated but not the amount? If you're not familiar, don't, don't, don't. Yes. No, I have read the case. Okay, good. You're ahead of me. Go ahead. Your Honor, and that's accurate. But it's also clearly established that it's required that a timely and a clear objection be raised. And we do not believe that there was a clear objection where the defense counsel indicated this is properly calculated and then made a somewhat ambiguous reference to whether this could be tied to the conduct of conviction. The Supreme Court — Well, the district court never had an opportunity to deal with these things we're talking about. Right? Correct, Your Honor. And that's the entire reason why objections are to be clear and timely, because as this Court has held, it's not fair to overturn a district court's decision when they didn't get an opportunity to address the issues that are being raised now before another court. And we do not believe that there was any clear objection that allowed the judge to address these objections now being raised. The United States, the Supreme Court in the United States v. Pizzolano has indicated that this Court's 52B discretion, the plain error review discretion, should be employed only in those circumstances where a miscarriage of justice would otherwise result. The United States does not believe that's the case here. Now, on this record where there's no dispute that this defendant did, in fact, kill numerous eagles, offer those eagles for sale, sell those eagles, he should be held accountable and he should be required to pay restitution for the eagles that he is established to have killed, again, within the course of the conduct for which he was convicted. And thus we, again, respectfully request that this order be affirmed in all respects. I do have additional time, but if you have no further questions, I can take my seat. Very well. Thank you for your argument. Thank you. Ms. Quinn, we'll hear rebuttal. Excuse me. I will start with the, I can find the language of the indictment in the jury instructions because I do think that is key to the restitution amount. I have the indictment in counts 1, 3, and 5 alleges that Mr. Huggs did possess, sell, barter, and offer to sell and barter and transport. In two of the counts it says a golden eagle and parts thereof of the foregoing eagle, and then in the fifth count it says golden eagles and parts thereof of the foregoing eagles. But then when the district court instructed the jury, there's only one eagle referred to in each count. And so each of those elements but for the dates is the same, and it alleges that Mr. Huggs possessed, sold, bartered, or offered to sell or barter or transported a golden eagle or parts of the eagle. And so the word that's missing from the statute is take. But what about in the marshaling instruction did the judge say they need only find a part in order to convict? No, he did not. Make sure I understand the question. The indictment would be charged in the conjunctive. It would say we allege that he took or sold the eagle and parts thereof. But then I was wondering if when the jury was instructed it was told the government must prove that he sold an eagle or any oar. It is an oar. In the jury instructions it is an oar. But they probably didn't have to specify whether they found the whole eagle or a part as sold. Right. But you're going back to the point that it wasn't a taking charge. It was only a sale charge. Yes, that's exactly right. And I would note on this question that the government's closing argument in both the opening portion and the rebuttal is clear that this is a case about trafficking eagle feathers. At no point is there an allegation that he had an entire bird. And the difference isn't really whether he was trafficking, for lack of a better word, an entire bird versus parts thereof, but whether he was charged with and convicted of killing. The distinction that we need to draw or that we believe is important is the distinction between taking or killing and then the trafficking type offenses. And I want to kind of return to this concept of there's a difference between relevant conduct and what Mr. Huggs was actually charged and convicted of. And I would note that even if the court disagrees that we should be limited to the controlled buy money, this says $70,000 includes well beyond the three or four birds that you can say the jury found Mr. Huggs guilty of. But this includes parts that were found in his house in a search warrant in March of 2021. That's at least four months after the end of these controlled buys. And it also includes at least one bald eagle, not just golden eagles. And it includes kind of general admissions. Mr. Huggs at trial was found to have admitted to kind of three general killings, two of which were in 2019, well before the charged offenses. And I am running out of time. We would, unless there are further questions, we would ask the court to vacate the $70,000 restitution award. Thank you. Very well. Thank you for your argument.